

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## No. PD-0303-10

**GERARDO LUJAN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

PER CURIAM.[1]  JOHNSON, J., filed a concurring opinion.  MEYERS, J., filed a dissenting opinion.

The court of appeals held that the checkpoint where drugs were discovered in Appellant's vehicle was illegal because it was not for the sole purpose of checking drivers' licenses and insurance.  We reverse.

A motion to suppress hearing was held on July 10, 2006.  At the hearing, Deputy Sheriff Hernandez testified that he was working a stationary vehicle check on February 9, 2006.  The

---

[1] This opinion was originally prepared by Judge Holcomb before his retirement on December 31, 2010.

purpose of the checkpoint was to target uninsured motorists and unlicensed drivers. An entire unit of the criminal interdiction unit was assigned, comprised of six to seven officers, including a supervisor and a K-9 unit. The officers stopped every vehicle that came through the checkpoint, both north and southbound. If the drivers had their licenses and insurance, they were waved through the checkpoint. Deputy Hernandez was checking northbound traffic, and he stopped Lujan's vehicle. Lujan informed Deputy Hernandez that he did not have a driver's license. He was directed to pull to the side of the road and park so Hernandez could issue a citation. Hernandez asked Lujan to step out of the vehicle and move over by his patrol car.

Hernandez then asked Lujan's passenger for his identification, and he had none. The passenger did tell Deputy Hernandez his name and birthdate. The passenger told Hernandez that he and Lujan had been at a friend's house buying roosters. Deputy Hernandez returned to Lujan, who also told him that they had been at a friend's house, but he gave a different name for the friend.

Hernandez went to his patrol unit to call in the names of both Lujan and the passenger for a warrant check and then returned to Lujan to complete the citation. While completing the citation, dispatch contacted Hernandez and informed him that the passenger had outstanding warrants.

Hernandez and another officer, Deputy Gonzales, approached the vehicle and arrested the passenger. Deputy Hernandez placed the passenger in the back seat of his patrol car while Deputy Gonzalez spoke further with Lujan. Gonzalez informed Lujan why his passenger was being arrested and told Lujan that he was going to conduct a pat down of him for safety reasons. He felt two bulges in Lujan's pockets, both of which were cash totaling $1,562.

Deputy Hernandez's suspicions were aroused by Lujan's extremely nervous behavior and the large amount of cash. He asked Lujan for permission to search the vehicle and Lujan agreed. The

K-9 officer was called over and his dog immediately alerted on Lujan's vehicle. The K-9 officer signaled Deputy Gonzalez to secure Lujan. He then pried the switch panel off of the passenger side door and discovered bags of white powdery substance hidden inside the door. Hernandez testified that, from the time Lujan was stopped to the time the drugs were discovered was six or seven minutes.

On cross-examination, Deputy Hernandez testified that his unit was not a traffic unit. At the time they were a criminal interdiction unit responsible for traffic enforcement, DWI enforcement and underage drinking. The unit did not exclusively check for unlicensed vehicles, but handled multiple tasks including racing, DWI, traffic enforcement, and narcotics. Immigration was not one of their tasks, but if they stopped someone who they suspected was illegal they would hold him for the border patrol. Deputy Hernandez testified that their intention was not to check for immigration status. The dog and his handler were part of the unit and the entire unit was assigned to do a check for unlicensed drivers and uninsured motorists that day. Deputy Gonzalez testified that they were checking for drivers' license and insurance. They would also enforce any other violations that they saw, such as expired inspection or registration stickers, missing license plates, or illegal immigration.

At the conclusion of the hearing, the trial court denied Lujan's motion to suppress. The trial court did not make any written findings of fact or conclusions of law. Pursuant to a plea bargain, Lujan pled guilty to a lesser included offense of possession of cocaine in an amount more than four grams but less than 200 grams and was sentenced to four years of imprisonment.

On direct appeal, Lujan argued that the checkpoint was not merely to check for drivers' licenses and insurance; it was a checkpoint for general criminal activity. The court of appeals held that the checkpoint was not solely for the purpose of checking drivers' license and insurance. The

criminal interdiction unit that handled racing, DWI, traffic enforcement, narcotics, and other tasks with a K-9 unit was searching for any evidence of criminal wrongdoing, which is not permitted. *Lujan v. State*, No. 08-06-00321-CR at 6 (Tex. App.–El Paso, December 9, 2009) (not designated for publication) *citing City of Indianapolis v. Edmond*, 531 U.S. 32, 39 (2000). The court of appeals noted that, while Deputy Hernandez stated that they were only doing the assigned task of a drivers' license and insurance checkpoint, Deputy Gonzalez stated that they were there for any violation they came across. The court of appeals held that a checkpoint that is used to determine if there are any ongoing criminal violations is too deep of an intrusion upon an individual's Fourth Amendment rights. *Lujan*, No. 08-06-00321-CR at 6.

We granted grounds one and two of the State's petition for discretionary review[2] to determine whether the court of appeals erred in its analysis.

The trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). The trial court is given almost complete deference in its determination of historical facts, especially when based on an assessment of

---

[2] The State's grounds read as follows:

(1) By finding that checking for drivers' licenses and proof of insurance was not the sole purpose for the checkpoint and that the officers conducted a general-crime-control checkpoint, did the court of appeals substitute itself as the factfinder and misapply the standard of review applicable when the trial court denies a suppression motion without express findings?

(2) Did the court of appeals err by focusing its checkpoint analysis on the testimony of an individual officer at the scene and whether checking drivers' licenses was the sole purpose of the checkpoint, thereby suggesting that an officer's intention to pursue other criminal activity that he came across transforms an otherwise valid checkpoint into a general-crime control checkpoint?

credibility and demeanor. The same deference is given to the trial court with respect to its rulings on the application of the law to questions of fact if resolution of those questions depends on an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). Mixed questions of law and fact that do not turn on credibility and demeanor are reviewed *de novo*. *Id.* When the trial court does not make express findings of fact, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and should assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id.* at 855-66.

A vehicle stop at a highway checkpoint is a seizure for Fourth Amendment purposes. *Edmond*, 531 U.S. at 40. A checkpoint to verify drivers' licenses and vehicle registration is permissible, but a checkpoint whose primary purpose is to detect evidence of ordinary criminal wrongdoing is not. *Id.*, at 39; *see also Delaware v. Prouse*, 440 U.S. 648, 663 (1979). The legality of the checkpoint in this case turns on whether its primary purpose was to check drivers' licences and insurance, or whether the primary purpose was general crime control. The primary purpose of the checkpoint is a mixed question of law and fact since the question turns on an evaluation of the credibility of the officers who testified at the suppression hearing. *Guzman*, 955 S.W.2d at 87.

Because the trial court denied Lujan's motion to suppress without express findings, this Court must assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d at 855-66. In this case, the trial court implicitly found that the primary purpose of the checkpoint was the permissible purpose of checking drivers' licenses and insurance. This finding is supported by the record. Deputy Hernandez explicitly testified that the purpose of the checkpoint was to target uninsured motorists and

unlicensed drivers. He denied an intent to check the drivers' immigration status. Deputy Gonzalez testified that drivers were waved through the checkpoint if they produced a driver's licence and proof of insurance. Viewed in the light most favorable to the trial court's ruling, this evidence supports the implicit finding that the primary purpose of the checkpoint was to check drivers' licences and insurance.

As noted by the court of appeals, the deputies offered what could be considered conflicting testimony regarding the purpose of the checkpoint. Deputy Hernandez stated that they were only doing the assigned task of a drivers' license and insurance checkpoint, but Deputy Gonzalez testified that they were there for any violations they came across. *Lujan*, No. 08-06-00321-CR at 6. The court of appeals believed Deputy Gonzalez's testimony over that of Deputy Hernandez. This credibility decision is one for the trial court. In denying the motion to suppress, the trial court implicitly believed Deputy Hernandez's testimony that this was only a license and insurance checkpoint. The testimony of both deputies can also be read in a way in which there is no conflict and to suggest that this was a proper checkpoint with license and insurance checks as its primary purpose. The credibility of the two deputies was essential in deciding the primary purpose of this checkpoint. One can read the deputies' testimony to indicate that they were looking primarily at license and insurance, but if another criminal violation presented itself then they would investigate. This is presumably the manner in which the trial court interpreted the testimony. Read in that light, the trial court implicitly found that this was a proper checkpoint. *Ross*, 32 S.W.3d at 855. Considering the standard of review, the court of appeals erred in rejecting the implicit fact findings of the trial court.

The two deputies testified at the suppression hearing that this was a license and insurance

checkpoint. They also testified that they were part of a criminal interdiction unit that handled racing, DWI, traffic enforcement, narcotics, and other tasks. The court of appeals relied on this testimony about other duties of the unit to conclude that the deputies were not merely conducting license and insurance checks at the checkpoint. However, the deputies did not testify that these other duties were their primary purpose at the time they were working the checkpoint. The trial court implicitly found that, while their unit also handled all of those other tasks; on this particular day the entire unit was assigned to the checkpoint and their primary purpose was drivers' license and insurance checks. The court of appeals also relied on the fact that there was a K-9 unit present, but the K-9 officer and his dog were part of the interdiction unit. If the interdiction unit as a whole was assigned to work this the checkpoint for license and insurance checks, the K-9 officer was also there for that reason and not to do general criminal enforcement. The fact that the K-9 officer had his dog with him does not render the checkpoint illegal. The court of appeals concluded that the license and insurance checkpoint was a subterfuge for general criminal enforcement. The trial court's denial of the motion to suppress is an implicit finding that it was not. .

If the primary purpose of the checkpoint is lawful– a license check as opposed to general law enforcement–police can act on other information that arises at the stop. The checkpoint's primary purpose of license and insurance verification does not prohibit police from considering other unrelated offenses that they discover during the stop. *Edmond*, 531 U.S. at 48. In *Edmond*, the Supreme Court made clear that officers are not required to conduct the license and registration check wearing blinders and ignoring any other violations of the law that they observe. Officers can still act on what they learn during a checkpoint stop, even if that results in the arrest of the motorist for an offense unrelated to the purpose of the checkpoint. *Id.*

A brief suspicionless stop at a checkpoint is constitutionally permissible if its primary purpose is to confirm drivers' licences and registration and not general crime control. *Id.*, at 39. In denying the motion to suppress, the trial court implicitly found that the primary purpose of this checkpoint was a permissible license and insurance check. *Ross*, 32 S.W.3d at 855. This finding was supported by the record.

We reverse the judgment of the court of appeals and affirm the judgments of the trial court.

DELIVERED: January 12, 2011
PUBLISH