COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

ANDREW JOHN BOHREN,       §

           Appellant,       §

v.       §

THE STATE OF TEXAS,       §

           Appellee.       §

      §

No. 08-10-00097-CR

Appeal from the

County Criminal Court No. 6

of Tarrant County, Texas

(TC# 1051587)

## **O P I N I O N**

A jury convicted Appellant, Andrew Bohren, of driving while intoxicated, and the trial court assessed sentence at 44 days in jail and a fine of $750. In a single issue on appeal, Appellant contends that the trial court erred by denying his motion to suppress. We affirm.[1]

## **BACKGROUND**

As Appellant does not challenge the evidence supporting his conviction, only a brief recitation of the necessary facts is relevant to our analysis. At the motion-to-suppress hearing, evidence was presented that the Arlington Police Department, in accordance with its written policies, instituted a driver's licence checkpoint on January 11, 2007, between 8:30 p.m. and 10 p.m. Police Sergeant Carol Riddle explained the methodology used by the department in conducting the checkpoints and how the same is explained in the department's written policy and operational plan. Specifically, she testified to the types of signs and barricades to be used, the personnel at the checkpoint, the towing of uninsured vehicles, and the specific procedure for routing vehicles through the checkpoint. According to Riddle, the purpose of the checkpoint is to ensure that motorists are

---

[1] As this case has been transferred to this Court, we apply the law of the transferor court. *See* TEX. R. APP. P. 41.3.

following the law for drivers' licenses and insurance. Indeed, if the motorists produce such unexpired documents, they were allowed to proceed on.

The checkpoint chosen for January 11, 2007, was a place where 43 major accidents occurred and more than two hundred citations were issued in the two years preceding the checkpoint. Such high-accident areas are where the checkpoints usually occur. Additionally, the supervising officer, Sergeant Leonesio, was present at the checkpoint, and the officers there were briefed that they would be checking for drivers' licenses and insurance violations.

Appellant entered the checkpoint that day with his windows rolled down. Officer Emma Trevino, who was the first officer there, asked for his driver's license, and when Appellant began speaking to the officer, calling her "sir," Officer Trevino noticed that a smell of alcohol was coming from his mouth. She also noticed that his eyes were red and bloodshot, and that his speech was slurred. A subsequent DWI investigation led to his arrest.

During the motion-to-suppress hearing, Appellant argued that the checkpoint was unconstitutional. Specifically, he asserted that the checkpoint was not followed in accordance with the department's manual, and noted that the officers were impermissibly instructed to enforce all offenses found, not just those limited to drivers' licenses and insurance violations. The trial court, however, overruled the motion:

> In reviewing the record and the testimony, it does appear that Arlington PD conducted this roadblock pursuant to standardized procedures for conducting these types of roadblocks, and that the checkpoint was conducted according to the established procedures, there was a supervisor present, and all these things limited the discretion of the field officers in conducting the driver's license and insurance checkpoint.
>
> I can find no pretext for securing probable cause to make DWI arrests, and, in fact, the testimony was that the only arrest made on the night in question was the arrest of [Appellant]. So the Court's decision is that [Appellant's] motion will be denied.

**DISCUSSION**

Appellant's sole issue on appeal challenges the trial court's denial of his motion to suppress. Specifically, Appellant contends that the checkpoint was not solely for the purpose of checking drivers' licenses and insurance, noting that Officer Trevino testified she was instructed "to take maximum enforcement on traffic violations," that is, that "if there was, for example, a registration violation, or inspection violation, or no driver's license or insurance, something like that, then I would not have discretion for that, and obviously any kind of offense, I would not have any type of discretion." Such instruction, according to Appellant, made the checkpoint here more akin to those that are instigated to detect evidence of any criminal wrongdoing, which have been found to be improper.

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We afford almost complete deference to a trial court's determination of historical facts, especially when based on an assessment of credibility and demeanor, and that same deference applies to the trial court's rulings on application of law to fact questions if resolution of those questions depend on an evaluation of credibility and demeanor. *Lujan*, 331 S.W.3d at 771; *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). However, mixed questions of law and fact that do not turn on credibility and demeanor are reviewed *de novo*. *Lujan*, 331 S.W.3d at 771; *Ross*, 32 S.W.3d at 856. And when no credibility or factual dispute exists, in other words, the issue is purely an application of the law to undisputed facts, we employ a *de novo* review. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Guzman*, 955 S.W.2d at 87.

Checkpoints are seizures for Fourth Amendment purposes. *City of Indianapolis v. Edmond*,

531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). Nevertheless, they are permissible so long as the primary purpose is not to detect evidence of ordinary criminal wrongdoing. *Id*. at 39; *Lujan*, 331 S.W.3d at 772. Thus, a checkpoint to verify drivers' licenses and vehicle registration is permissible. *Edmond*, 531 U.S. at 39; *Lujan*, 331 S.W.3d at 771-72. As the Court of Criminal Appeals recently noted, when the legality of a checkpoint turns on whether its primary purpose was to check drivers' licenses and insurance, or whether the primary purpose was general crime control, "[t]he primary purpose of the checkpoint is a mixed question of law and fact since the question turns on an evaluation of the credibility of the officers who testified at the suppression hearing." *Lujan*, 331 S.W.3d at 772.

### *Application*

After Appellant filed his brief in this case, the Court of Criminal Appeals issued its decision in *Lujan*, which seemingly disposes of the issue here. There, the defendant was asked to pull over after passing through a checkpoint without having a driver's license. *Lujan*, 331 S.W.3d at 770. The defendant was later arrested after further investigation revealed narcotics in his car. *Id*. At the motion-to-suppress hearing, the defendant argued that the primary purpose of the checkpoint was to look for general criminal activity. *Id*. The trial court disagreed, and the Court of Criminals upheld that decision. *Id*. at 771-72. Indeed, the Court pointed out that the trial court heard evidence that the primary purpose of the checkpoint was to look for uninsured motorists and unlicensed drivers. *Id*. at 772. It noted that a deputy testified that drivers were waved through the checkpoint if they produced a driver's license and proof of insurance, and that the deputy denied that the purpose was to check for other violations. *Id*. From this evidence, the Court concluded that the trial court could have found that the primary purpose of the checkpoint was to check drivers' licenses and insurance. *Id*.

The Court further noted that although one deputy testified that they were there for any violations they came across, one can read that testimony "to indicate that they were looking primarily at license and insurance, but if another criminal violation presented itself then they would investigate." *Id*. "Read in that light, the trial court implicitly found that this was a proper checkpoint," and that decision must be upheld, given the standard of review. *Id*. Finally, the Court pointed out that despite the fact that the deputies assigned to the checkpoint were part of a criminal interdiction unit that handled racing, DWI, traffic enforcement, narcotics, and other tasks, those facts did not mean that the primary purpose of the checkpoint was to look for criminal wrongdoing other than drivers' licenses and insurance violations. *Id*. at 772-73. Rather, the Court stated:

> If the primary purpose of the checkpoint is lawful – a license check as opposed to general law enforcement – police can act on other information that arises at the stop. The checkpoint's primary purpose of license and insurance verification does not prohibit police from considering other unrelated offenses that they discover during the stop. *Edmond*, 531 U.S. at 48, 121 S.Ct. 447. In *Edmond*, the Supreme Court made clear that officers are not required to conduct the license and registration check wearing blinders and ignoring any other violations of the law that they observe. Officers can still act on what they learn during a checkpoint stop, even if that results in the arrest of the motorist for an offense unrelated to the purpose of the checkpoint. *Id*.

*Lujan*, 331 S.W.3d at 773.

We find those same facts here. Sergeant Riddle testified that the purpose of the checkpoint was to ensure that motorists were following the law for drivers' licenses and insurance. And Officer Trevino stated that she was briefed that their primary purpose for the checkpoint would be for checking drivers' licenses and insurance. Although Officer Trevino also testified that she was not allowed to turn a blind eye to other violations, such as expired registration, that does not mean the primary purpose of the checkpoint was not to check for drivers' licenses and insurance. *See Lujan*, 331 S.W.3d at 772. Based on the testimony presented, the trial court could have reasonably found

that the primary purpose of the checkpoint was to check drivers' licenses and insurance, not that it was a pretext for other criminal wrongdoing. Accordingly, this was a permissible checkpoint, and we find that the trial court did not abuse its discretion by overruling Appellant's motion to suppress. *Id*.; *see also Hirmon v. State*, No. 2-05-272-CR, 2006 WL 2854306, at *3 (Tex. App. – Fort Worth Oct. 5, 2006, no pet.) (mem. op., not designated for publication) (upholding checkpoint for drivers' licenses and insurance). Appellant's sole issue is overruled.

## CONCLUSION

Having overruled Appellant's sole issue, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

July 29, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)