*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-11-00094-CR

Terry Darnell **GRAHAM**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kimble County, Texas
Trial Court No. 08-1705
The Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
            Karen Angelini, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  November 16, 2011

AFFIRMED

Appellant Terry Darnell Graham appeals the trial court's denial of his motion to suppress physical evidence of money laundering. Graham argues that the trial court erred in denying his motion because (1) the arresting officer lacked reasonable suspicion to justify the initial stop of the vehicle in which Graham was a passenger, (2) the officer lacked reasonable suspicion to continue the detention of Graham and the vehicle, and (3) the officer lacked probable cause to search the vehicle. We affirm the trial court's judgment.

**BACKGROUND**

On March 5, 2008, Officer Billy Hull of the Kimble County Sheriff's Department stopped Israel Washington and Terry Darnell Graham.  As a counter-narcotics officer, Hull was travelling with a dog trained to detect the odors of narcotics.  While patrolling an interstate highway, Hull noticed that Graham, the passenger in a passing vehicle, "appeared to be unseatbelted."  Using the patrol car's mobile data computer, Hull checked the vehicle's Georgia license plates.  The results showed the car was "unregistered."  Hull stated at trial that he pulled the vehicle over to ascertain its registration and to determine if Graham was wearing a seatbelt.

Washington, the driver, immediately exited the vehicle and approached Hull midway between the two vehicles.  Hull informed Washington that he was pulled over because the vehicle's license plates appeared unregistered.  Hull questioned Washington for a few minutes about the registration and ownership of the vehicle.  Hull then approached Graham, who was still seated in the passenger seat, and discovered Graham was in fact wearing a seat belt.  Through the opened passenger-side window, Hull questioned Graham about the vehicle.  Graham told Hull that his cousin, Jacko Williams, was the previous owner of the vehicle and had sold it to Graham less than a month prior to the date of the traffic stop.  Graham produced a handwritten bill of sale indicating transfer of the vehicle to Graham.  The receipt had not been completely filled out by Graham, and Graham admitted that he had not yet obtained a pink-slip or a title to the vehicle.  Deputy Hull also asked the men about their trip from California to New Orleans and where they had stayed in New Orleans.  The men told the officer they had been at a family reunion; however, the two initially gave conflicting statements as to where they stayed.  Hull then radioed his dispatcher to check the two occupants' California driver's licenses and the vehicle's identification number.  The dispatcher reported the following: (1) the men had valid licenses; (2)

the car was registered to a Jacko Williams and was not reported stolen; (3) neither of the two men had any outstanding warrants; and (4) both men had criminal records showing a history of narcotics use or distribution.

After receiving the dispatch, Hull approached Graham, who had remained in the vehicle up to that point, and told him "I'm still not getting anything back on [the vehicle]." Hull had Graham step out of the vehicle. Upon Graham's exit, Hull smelled a faint odor of marihuana that was previously undetected. Both Graham and Washington denied possessing or recently using marihuana. Hull asked for consent to search the vehicle. The men initially consented but withdrew their consent. Hull deployed his canine to perform a "clean air" search of the vehicle based on (1) the conflicting stories given by Washington and Graham, (2) the nervous behavior exhibited by the two men, (3) the fact that both men had prior drug arrests, (4) the unresolved issue of permission to use the vehicle, and (5) the faint odor of marihuana on Graham. The dog alerted to the odor of narcotics, and Hull subsequently discovered $57,115.00 in sealed bags hidden in the lining of the center console. No drugs were found in the vehicle.

Prior to trial, Graham moved to suppress the admission of the money seized from the vehicle because the search was unreasonable. Officer Hull was the only witness to testify at Graham's suppression hearing. The trial court denied Graham's motion to suppress the confiscated money. At the trial on the merits, the jury returned a guilty verdict on the money laundering indictment. The trial court sentenced Graham to five years imprisonment. Graham appeals.

**WARRANTLESS SEARCH**

In his sole issue on appeal, Graham argues the trial court erred in denying his motion to suppress because the initial stop, the continued detention, and the warrantless search of his vehicle were not justified by reasonable suspicion or probable cause.

**A. Standard of Review**

In reviewing a trial court's ruling on a motion to suppress evidence, a reviewing court uses a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). First, almost total deference is given to the trial court's factual determinations. *Valtierra*, 310 S.W.3d at 447. Second, we review de novo the application of law to the facts, and we will affirm a ruling that is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447–48. Finally, in the absence of express findings of fact, a reviewing court "must view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* at 447 (quoting *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006)) (internal quotation marks omitted).

**B. Analysis**

*1. The Initial Stop*

A valid temporary detention must be reasonable. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). There are two components for determining whether a *Terry* stop is justified. *Id.* First, a court must determine "whether the officer's action [in detaining a person] was justified at its inception"; second, the court must determine whether the detention "was reasonably related in scope to the circumstances [that] justified the interference in the first place." *Id.*; *see also Kothe*

*v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). If an officer has a reasonable basis for suspecting a person has committed a traffic violation, he may legally initiate a traffic stop. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *State v. McCall*, 929 S.W.2d 601, 603 (Tex. App.—San Antonio 1996, no pet.). "In deciding whether the scope of a *Terry* detention is 'reasonable,' the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe*, 152 S.W.3d at 63.

Because the trial court did not enter findings of fact, this court may assume that the trial court found the initial stop justified under either or both of Officer Hull's purported reasons for pulling the vehicle over—the passenger's failure to use a seatbelt or the issue with the vehicle's registration. *See Valtierra*, 310 S.W.3d at 447.

It is an offense for an adult passenger or driver to ride unrestrained by a seatbelt in a passenger vehicle when the vehicle is equipped with such restraints. TEX. TRANSP. CODE ANN. § 545.413 (West 2007); *see also State v. Skiles*, 938 S.W.2d 447, 453 (Tex. Crim. App. 1997). It is also an offense to operate a vehicle that is not properly registered. TEX. TRANSP. CODE ANN. §§ 502.0079, 502.401, 502.402; *Glazner v. State*, 175 S.W.3d 262, 263–64 (Tex. Crim. App. 2005). "A nonresident owner of a privately owned passenger car that is *registered in the state or country in which the person resides* . . . may operate the car in this state for the period in which the car's license plates are valid." TEX. TRANSP. CODE ANN. § 502.0079(c) (emphasis added).

Officers may check license plate and registration numbers to verify an automobile's ownership and registration status. *See McDuff v. State*, No. 08-10-00104-CR, 2011 WL 1849540, at *2–3 (Tex. App.—El Paso May 11, 2011, pet. ref'd) (mem. op., not designated for publication); *Turner v. State*, No. 05-99-01246-CR, 2000 WL 1702677, at *1 (Tex. App.—Dallas Nov. 15, 2000, no pet.) (mem. op., not designated for publication). The initiation of an

investigative detention is reasonable when a vehicle does not appear to be registered. *McDuff*, 2011 WL 1849540, at \*1 ("[T]he information provided to an officer by a computer return can by itself support a determination of reasonable suspicion.").

We acknowledge that Officer Hull's testimony concerning Graham's seatbelt was inconsistent.[1] However, the trial court could have believed Officer Hull's testimony. *See Lujan v. State*, 331 S.W.3d 768, 772 (Tex. Crim. App. 2011) ("[The] credibility decision [of a witness at a suppression hearing] is one for the trial court."). It was not necessary for Hull to show that Graham was not *actually* wearing a seatbelt—Hull merely needed to show he reasonably believed Graham was not wearing one. *See Drago v. State*, 553 S.W.2d 375, 377–78 (Tex. Crim. App. 1977).

Even if the court did not believe Officer Hull's testimony regarding the seatbelt, it could have determined that the vehicle's lack of registration supported the stop. Because Officer Hull's initial check of the vehicle's registration showed the vehicle was "unregistered," he was permitted to stop the vehicle. *See* TEX. TRANSP. CODE ANN. §§ 502.0079; 502.401; 502.402; (West 2007); *see also Mcduff*, 2011 WL 1849540, at \*2–3; *Turner*, 2000 WL 1702677, at \*1. Based on the foregoing evidence, we cannot say that the trial court erred in failing to find the initial stop was unjustified. We overrule Graham's first issue.

2. *The Continued Detention*

We next turn to whether the detention lasted longer than necessary to effect the purpose of the stop. *See Kothe*, 152 S.W.3d at 63; *see also Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Citing *Davis v. State*, Graham argues on appeal that the investigative detention became unreasonable when Officer Hull discovered (1) Graham was wearing a

---

[1] Officer Hull initially testified that the passenger appeared to be "unseatbelted" and subsequently testified that he "didn't have a clue" and had no factual basis to conclude Graham was not wearing a seatbelt.

seatbelt, (2) the vehicle was registered to a third party, and (3) Graham produced a bill of sale. *See Davis*, 947 S.W.2d at 244.  However, *Davis* is distinguishable.  In *Davis*, officers pulled over a driver for suspicion of driving while intoxicated.  *Id.* at 245.  Shortly after pulling him over, the officers confirmed he was not intoxicated.  *Id.*  The court noted that at this point, "the purpose of the investigative detention was effectuated."  *Id.*  However, the officers continued to detain Davis because his casual attire seemed to contradict his claim that he was on a business trip.  *Id.*; *id.* at 248 (Mansfield, J. concurring).  The continued detention revealed that Davis was a properly licensed driver with no warrants, the vehicle was not in Davis's name, the vehicle was not reported stolen, and his passenger had a conviction for a drug offense.  *Id.* at 241, 245–46 (majority opinion).  Notably, the officers detected no odors of alcohol or narcotics emanating from Davis's person or vehicle.  *Id.* at 241, 246.  The court held that after the detention's purpose was effectuated, the officers essentially engaged in a "'fishing expedition for unrelated criminal activity.'"  *Id.* at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41 (1996)).

Unlike *Davis*, the vehicle Graham was in was pulled over for possible registration violations.  *See Davis*, 947 S.W.2d at 241.  The issues of registration and ownership of the vehicle were not immediately resolved.  Officer Hull gave specific and articulable facts for Graham's continued detention.  Officer Hull testified that his vehicle's mobile data computer alerted him that the vehicle was unregistered.  This raised his suspicion that the vehicle's occupants did not have permission to use the vehicle.  After radioing dispatch, he was informed that the vehicle was registered in Georgia to a third party and that it was not reported stolen. Despite the vehicle's positive registration status, Hull's suspicions regarding ownership were heightened by the two occupants' inconsistent statements regarding their trip to New Orleans. Additionally, Hull had suspicions about the handwritten bill of sale.  Considering the totality of

the circumstances, we cannot say it was unreasonable for Hull to continue to investigate the vehicle's ownership. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010); *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). Moreover, the specific language used in the Transportation Code that permits a nonresident to operate a vehicle when the "passenger car . . . is registered in the state or country in which the person *resides*," supports a determination that Graham had reasonable suspicion to continue the detention. *See* TEX. TRANSP. CODE ANN. § 502.0079 (West 2007) (emphasis added).[2]

While continuing to investigate the vehicle's registration, Hull detected a faint odor of marihuana on Graham. Even though the initial stop was unrelated to a drug offense, an officer may investigate the occurrence of another offense while investigating the circumstances of the initial suspected violation. *See Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). The trial court could have determined Hull's testimony to be credible and that the registration issue warranted a continued detention of the vehicle. Therefore, the trial court could have found that Hull had not effectuated the purpose of the stop—i.e., that he had not determined the ownership and registration status of the vehicle. We hold that the trial court did not err in failing to find that the further detention of Graham was unreasonable. We overrule Graham's second issue.

### 3. *The Search of the Vehicle*

Finally Graham complains that the search of the vehicle violated both the Fourth Amendment and the Texas Constitution because Officer Hull had no factual basis to suspect that the vehicle contained contraband. However, Officer Hull testified that he smelled marihuana after Graham exited the vehicle. Hull deployed a canine search only after he had smelled

---

[2] It is undisputed that neither Graham nor Jacko Williams resided in Georgia, where the car was registered—both men were California residents.

marihuana on Graham. Because the odor of marihuana gave rise to probable cause to perform a "clean air" search around the vehicle, Officer Hull's deployment of a canine search was justified. *See Walter v. State*, 28 S.W.3d 538, 544 (Tex. Crim. App. 2000); *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979); *Aldridge v. State,* 482 S.W.2d 171, 173–74 (Tex. Crim. App. 1972); *Longoria v. State,* 747 S.W.2d 50, 52 (Tex. App.—San Antonio 1988, no writ).

Based on either the smell of marihuana or the alert of Hull's dog to the odor of narcotics, Hull had probable cause to perform an interior search of the vehicle. *See Razo*, 577 S.W.2d at 711 ("[D]uring the legitimate detention of appellant, the officers acquired additional probable cause to believe a more serious charge was being committed and were therefore justified in searching appellant's vehicle."); *Moulden v. State*, 576 S.W.2d 817, 820 (Tex. Crim. App. [Panel Op.] 1978). Based on the evidence, we hold that the trial court did not err in refusing to find the search of the vehicle violated Graham's rights under either the Fourth Amendment or the Texas Constitution. Graham's third issue is overruled.

## CONCLUSION

Having reviewed the record under the appropriate standard of review, we hold that the trial court did not err in denying appellant's motion to suppress. Therefore, we affirm the trial court's judgment.

Rebecca Simmons, Justice

DO NOT PUBLISH