Opinion filed April 17, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00145-CR

_____

## THE STATE OF TEXAS, Appellant

## V.

## ROBERT MENDOZA, JR., Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR21615**

## M E M O R A N D U M   O P I N I O N

Appellee, Robert Mendoza, Jr., was charged with the offense of possession of methamphetamine, with intent to deliver, in an amount of four grams or more but less than 200 grams. Mendoza filed a pretrial motion to suppress the evidence in which he asserted that the officers found the methamphetamine as a result of his illegal detention. The trial court granted Mendoza's motion. The State has filed

this interlocutory appeal from the trial court's order. In its sole issue on appeal, the State asserts that the trial court erred when it granted Mendoza's motion to suppress. We reverse and remand.

The evidence at the suppression hearing showed that, on the morning of June 18, 2011, Brownwood Police Officer Walker Willey was dispatched in response to an anonymous caller's report to police that a suspicious vehicle was parked in the parking lot of a strip mall in Brownwood before businesses in the mall had opened for the day. The caller stated that the car had been there since before 8:30 a.m. and that there were occupants in the car. The caller provided the police with a description of the car and the license plate number for the car.

Officer Willey was in a marked patrol vehicle. He arrived at the strip mall at 9:27 a.m. to perform a welfare check on the occupants of the car. Officer Willey saw a parked Cadillac in a parking space in front of the Western Union store. The Cadillac matched the description and had the license plate number that the anonymous caller had provided. Officer Willey said that the parking lot was a public parking lot.

Officer Willey parked his patrol car in a parking space that was behind the Cadillac. He did not block the Cadillac with his car. He said that there was at least a car length between the two vehicles and that there was room for traffic to pass between the vehicles. Officer Willey got out of his car and approached the Cadillac. At that time, he contacted Rosa Isela Cortez, who was on the sidewalk of the strip mall. She told Officer Willey that she was going to the Western Union to get money. Cortez entered the Western Union.

Enemencio Delarosa IV was in the driver's seat of the Cadillac, and Mendoza was in the front passenger's seat. Officer Willey told Delarosa through the rolled-down driver's window the reason that he had been dispatched to the scene. Before Officer Willey requested anything from   Delarosa and Mendoza,

they informed him that they were at the Western Union to get money wired to them so that they could buy gas for the Cadillac and then go to San Angelo.

Officer Willey asked Mendoza and Delarosa for identification as part of his standard operating procedure for a welfare check. Neither Mendoza nor Delarosa had a valid driver's license. Delarosa told Officer Willey that he had not driven the Cadillac but that Cortez had been the driver. In response to Officer Willey's questions, Delarosa told Officer Willey that the group had been to Dallas and was returning to San Angelo. Mendoza told Officer Willey that his driver's license had been suspended. Mendoza claimed that he owned the Cadillac. Officer Willey told Mendoza that the Cadillac was registered to someone else. In response, Mendoza told Officer Willey that he was buying the car from the registered owner.

Cortez came out of the Western Union. Officer Willey asked her if she had a driver's license. Cortez showed Officer Willey a Texas driver's license and told him that her license was in good standing. Officer Willey performed driver's license checks on Mendoza, Delarosa, and Cortez through dispatch. Based on the check, Officer Willey learned that Cortez's license was suspended.

Officer Willey told Mendoza, Delarosa, and Cortez that they could not drive the Cadillac because they did not have valid driver's licenses. Officer Willey did not arrest anyone for an offense of driving with a suspended license in connection with the group's trip to Brownwood. He did not know who had driven. Officer Willey said that Mendoza, Delarosa, and Cortez made telephone calls in an effort to find a licensed driver to drive the Cadillac. After they made some calls, they informed Officer Willey that a licensed driver was coming from Winters, Texas, to get them. Officer Willey said that the drive from Winters to Brownwood takes over an hour. Officer Willey believed that, if he left the scene before the licensed driver arrived, Mendoza, Delarosa, or Cortez would drive the Cadillac away.

3

Therefore, Officer Willey stayed at the scene to make sure that Mendoza, Delarosa, or Cortez did not commit another driving offense.

While they waited for the licensed driver, Officer Willey asked Cortez for details about the group's trip. Like Delarosa, Cortez told Officer Willey that the group had been to Dallas. Cortez did not tell Officer Willey whether she had gotten any money at the Western Union.

Officer Willey was suspicious about the group's version of events related to their trip. He asked Cortez whether there was anything illegal in the vehicle. Cortez responded that she did not know, that the Cadillac was Mendoza's vehicle, and that Mendoza was in charge of the vehicle. Officer Willey asked Cortez to walk to the sidewalk so that she would not be in traffic in the parking lot.

Mendoza stood with Officer Willey near the trunk of the Cadillac. Officer Willey asked Mendoza whether there was anything illegal inside the Cadillac. Mendoza responded, "No." Officer Willey requested consent from Mendoza to search the Cadillac. Mendoza told Officer Willey, "No." Officer Willey asked Mendoza to go to the sidewalk while the group waited on the licensed driver. At that time, Delarosa was already on the sidewalk. Mendoza went to the sidewalk, and he, Delarosa, and Cortez sat on the sidewalk in the shade while they waited for their driver.

Officer Willey looked through the windows of the Cadillac. He did not see any contraband in plain view. As he walked around the back of the car, Mendoza opened the trunk with a key fob, even though Officer Willey did not request him to do so. Officer Willey said that the group did not have any luggage or personal effects in the trunk that would have been consistent with taking an overnight trip to Dallas.

Officer Willey testified that, because his suspicions were raised, he requested the assistance of a canine unit for an "open-air search" around the

4

Cadillac. After he requested the canine unit, Officer Willey did not have any further conversations with Mendoza, Delarosa, or Cortez. Officer Willey did not tell Mendoza, Delarosa, or Cortez that they could not walk away from the scene, and they did not request to leave.

Detective James Stroope of the Brown County Sheriff's Office arrived with his police dog at 10:15 a.m., less than twenty minutes after Officer Willey requested assistance. Before Detective Stroope directed his dog to perform the free-air sniff, he explained the process to Mendoza. Detective Stroope told Mendoza that the police dog was trained to alert to cocaine, methamphetamine, marihuana, and heroin. Detective Stroope said that Mendoza and his companions did not indicate that they wanted to leave the scene.

The police dog performed a free-air sniff around the Cadillac. The dog alerted on the driver's door. Based on the alert, Detective Stroope let the dog into the car. The dog alerted to an area between the radio and the glove box. Detective Stroope and Officer Willey then searched the Cadillac. They found a white paper sack in the glove compartment with two plastic bags inside it. The bags contained about forty-five grams of methamphetamine. Mendoza, Delarosa, and Cortez were placed into custody and arrested for possession of methamphetamine.

After the evidence was concluded, the trial court granted Mendoza's motion to suppress. The trial court entered findings of fact and conclusions of law in support of its ruling. The trial court listed eighteen different items in its findings and conclusions but did not state which of the items it considered to be findings of fact and which of the items it considered to be conclusions of law. The trial court entered the following pertinent findings and conclusions, among others:

> 1. Officer Willey of the Brownwood Police Department was originally dispatched to the scene of his encounter with [Mendoza] on

5

the morning of June 18, 2011[,] in response to a call regarding a suspicious vehicle.

2. Officer Willey was in police uniform and driving a marked patrol unit when he arrived on the scene.

3. Officer Willey located the described vehicle pulled into a parking space in front of a Western Union.

4. Officer Willey parked his car directly behind and across the traffic lanes from the described vehicle.

5. Officer Willey initiated contact with the individuals Robert Mendoza, Enemencio Delarosa IV, and Rosa Isela Cortez.

6. Officer Willey parking his unit behind the described vehicle and initiating contact with Robert Mendoza, Enemencio Delarosa IV, and Rosa Isela Cortez constituted a show of authority under which a reasonable person would not have felt free to leave and thus constituted a detention.

7. The original purpose of Officer Willey's detention and questioning of Robert Mendoza, Enemencio Delarosa IV, and Rosa Isela Cortez was satisfied upon his determination that they were outside the Western Union because they were waiting on money for gas.

8. Officer Willey unreasonably and illegally extended the detention when he continued to question Robert Mendoza, Enemencio Delarosa IV, and Rosa Isela Cortez after determining the reason for their waiting outside the Western Union.

9. Even if Officer Willey's discovery that none of the individuals had a valid driver's license would have given him reasonable suspicion to extend the detention, the purpose of such extended detention was satisfied upon his determination that he was not going to attempt to charge any of the three individuals with an offense related to driving without a valid license.

10. Officer Willey unreasonably and illegally extended the detention when he continued to question Robert Mendoza, Enemencio Delarosa IV, and Rosa Isela Cortez after determining that he was not going to attempt to charge any of the three individuals with an offense related to driving without a valid license.

11. Officer Willey's telling Robert Mendoza, Enemencio Delarosa IV, and Rosa Isela Cortez that they could not leave until a driver with a valid license arrived and then continuing to question them after being informed that a licensed driver was on the way and determining that he was not going to attempt to charge any of the three individuals with an offense related to driving without a valid license constituted an illegal detention.

. . . .

16. Under the totality of the circumstances, once he had determined that he was not going to attempt to charge any of the three individuals with an offense related to driving without a valid license, Officer Willey had no objectively articulable reason to suspect that an illegal activity had occurred, was occurring, or soon would occur.

17. Any subsequent additional discoveries or determinations made by Detectives Stroope or [Joe] Aaron [Taylor] were the direct result of an illegal detention and did not remove the taint of the illegal detention that preceded and was ongoing when they were made.

18. The call for the drug dog, open air sniff, and subsequent search of the vehicle were initiated without an objectively articulable reason to suspect that an illegal activity had occurred, was occurring, or soon would occur and were the products of an illegal detention. Any evidence thus seized or statements taken in connection with the arrests in this matter are thus the product of [an] illegal detention and should be suppressed.

The State contends in its appellate issue that the trial court erred when it found that Officer Willey detained Mendoza. The State asserts that Officer Willey's contact with Mendoza was a consensual encounter. Alternatively, the

State contends that, if Officer Willey, in fact, detained Mendoza, any detention was reasonable. Based on its alternative contentions, the State argues that the trial court erred when it granted Mendoza's motion to suppress. Mendoza contends (1) that the reason for Officer Willey's dispatch to the scene was concluded when Officer Willey determined that Mendoza, Delarosa, and Cortez were there to obtain money at the Western Union, which was a lawful activity; (2) that "Officer Willey's continued questioning of [Mendoza] and his companions, directing them out of the vehicle and onto the sidewalk, and circling and peering into the vehicle constituted repeated and continuing shows of authority which turned the initial encounter into an illegal detention"; and (3) that "[t]he initial illegal detention was further illegally extended when Officer Willey continued to hold and question [Mendoza] and his companions after determining he was not going to charge them with Driving While License Invalid." Based on his contentions, Mendoza argues that the trial court did not err when it granted his motion to suppress.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). We review the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When, as here, the trial court makes explicit findings of fact, we afford those findings almost total deference as long as the record supports them, and we afford the same amount of deference to the trial court's rulings on mixed questions of law and fact if those rulings turned on an evaluation of credibility and demeanor. *State v. Castleberry*, 332 S.W.3d 460, 465–66 (Tex. Crim. App. 2011). We apply a de novo standard of review to pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). The application of legal principles to a specific set of facts is an issue of law that is subject to de novo review. *Johnson v. State*, 414

S.W.3d 184, 192 (Tex. Crim. App. 2013). Thus, the question of whether a given set of historical facts amounts to an encounter or a detention under the Fourth Amendment is a legal issue that we review de novo. *Id.*; *Garcia-Cantu*, 253 S.W.3d at 241.

Police and citizens may engage in three distinct types of interactions: consensual encounters, investigative detentions, and arrests. *Johnson*, 414 S.W.3d at 191. Unlike an investigative detention and an arrest, consensual police-citizen encounters do not implicate Fourth Amendment protections. *State v. Woodard*, 341 S.W.3d 404, 411–12 (Tex. Crim. App. 2011); *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Police officers are as free as any other citizen to ask for information or cooperation; no justification is required for an officer to request information from a citizen. *Wade v. State*, No. PD-1710-12, 2013 WL 4820299, at *2 (Tex. Crim. App. Sept. 11, 2013); *Woodard*, 341 S.W.3d at 411. A consensual encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen. *Crain*, 315 S.W.3d at 49. An officer may ask questions of an individual, may ask to examine the individual's identification, and may request consent to search, as long as the officer does not convey a message that compliance with his requests is required. *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991). A consensual encounter may be uncomfortable for a citizen, but it does not constitute a seizure under the Fourth Amendment. *Wade*, 2013 WL 4820299, at *2. Citizens may, at will, terminate consensual encounters. *Woodard*, 341 S.W.3d at 411. Even when the officer does not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence in the request does not cause the encounter to lose its consensual nature. *Id.*

Courts consider the totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt

free to ignore the request or terminate the interaction. *Woodard*, 341 S.W.3d at 411. If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred. *Id.* The surrounding circumstances, including time and place, are taken into account, but the officer's conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure. *Id.*

No bright-line rule governs when a consensual encounter becomes a detention. *Woodard*, 341 S.W.3d at 411. To analyze the issue, courts focus on whether the officer conveyed a message that compliance with his request was required. *Crain*, 315 S.W.3d at 49. Generally, when an officer through force or a show of authority restrains a citizen's liberty, the encounter is no longer consensual. *Woodard*, 341 S.W.3d at 411. An investigative detention, which implicates Fourth Amendment protections, occurs when a person yields to a police officer's show of authority under a reasonable belief that he is not free to leave. *Crain*, 315 S.W.3d at 49. Some examples of circumstances that might indicate a detention has occurred would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, the blocking of the defendant's vehicle with a police vehicle, or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled. *Johnson*, 414 S.W.3d at 193; *Crain*, 315 S.W.3d at 49–50. When there is a detention, courts must decide whether the detaining officer had reasonable suspicion that the citizen is, has been, or soon will be engaged in criminal activity. *Woodard*, 341 S.W.3d at 411.

The trial court concluded that the initial interaction between Officer Willey and Mendoza constituted a detention. Specifically, the trial court stated that Officer Willey engaged in a show of authority when he parked his patrol car behind Mendoza's Cadillac and initiated contact with Mendoza, Delarosa, and

10

Cortez. The trial court concluded that, based on the show of authority, a reasonable person would not have felt free to leave and that, therefore, the interaction constituted a detention.

The record does not support the trial court's conclusion that the initial interaction was a detention. Officer Willey did not conduct a stop of Mendoza's Cadillac. Rather, Mendoza and his companions parked the car in a public parking lot at the strip mall before Officer Willey arrived at the scene. As the trial court found, Officer Willey arrived at the scene in his marked patrol unit and saw the Cadillac in a parking space in front of the Western Union. Also as the trial court found, Officer Willey parked his car in a parking space that was behind and across a traffic lane from the Cadillac. There was at least a car length between the vehicles. Thus, Officer Willey did not park his car in a manner that blocked Mendoza's Cadillac in the parking lot.

Officer Willey approached the Cadillac. Officer Willey's interaction with the group occurred in broad daylight. He first contacted Cortez, who was on the sidewalk. She told Officer Willey that she was going to get money at the Western Union. Officer Willey did not stop Cortez from going into the Western Union. Mendoza and Delarosa told Officer Willey that they needed the money to buy gas for the Cadillac.

The trial court concluded that Officer Willey unreasonably and illegally extended the detention because he continued to question Mendoza, Delarosa, and Cortez after he determined that they were at the Western Union to get money for gas. The record shows that Officer Willey asked Delarosa questions about the group's trip to Dallas. Officer Willey also asked the members of the group for information related to driver's licenses. As noted above, Officer Willey was free to approach Mendoza and his companions, ask them questions, and ask them for information. *See Woodard*, 341 S.W.3d at 411; *Crain*, 315 S.W.3d at 49.

Officer Willey could also ask to examine their driver's licenses for identification purposes. *See Bostick*, 501 U.S. at 434–35. Officer Willey's questions and requests for information did not amount to a seizure or a show of authority. *See id.* Officer Willey did not, through words or action, convey a message to the members of the group that they had to answer his questions or comply with his requests for information.

The facts found by the trial court do not support the conclusion that Officer Willey exercised a show of authority during the initial interaction, much less a show of authority under which a reasonable person would not have felt free to leave. *See Crain*, 315 S.W.3d at 49–50. Officer Willey asked questions that he was permitted to ask. Officer Willey was not required to stop asking questions when the members of the group told him that they were at the Western Union to obtain gas money. Based on our consideration of the totality of the circumstances, including Officer Willey's conduct, we conclude that Officer Willey's initial interaction with Mendoza and his companions was a consensual encounter; a reasonable person would have felt free to terminate the interaction. Accordingly, we hold that the trial court abused its discretion when it concluded (1) that the initial interaction between Officer Willey and Mendoza was a detention and (2) that Officer Willey either detained or illegally extended the detention when he continued to question the group after he learned the reason they were at the Western Union.

During the consensual encounter, Officer Willey learned that none of the members of the group had a valid driver's license. Delarosa was in the driver's seat when Officer Willey arrived at the scene. However, Delarosa told Officer Willey that Cortez had been the driver. Officer Willey did not know who had driven the Cadillac to the strip mall in Brownwood, and he decided not to charge anyone with an offense related to driving without a valid license.

12

The trial court concluded that Officer Willey unreasonably and illegally extended the detention because, after he decided not to charge anyone with a driving offense, he continued to question Mendoza and his companions. The trial court also concluded that Officer Willey illegally detained Mendoza and his companions when he told them that they could not leave until a licensed driver arrived and then continued to question them after they told him that a licensed driver was on the way.

Officer Willey told Mendoza, Delarosa, and Cortez that, because none of them had a valid driver's license, they could not leave the scene in the Cadillac until a licensed driver arrived to drive it. In the absence of a valid license, Mendoza and his companions could not lawfully drive any car. If Officer Willey had permitted them to leave in the Cadillac, whoever drove the car would have committed another offense. Once Officer Willey determined that none of the members of the group had a valid license, his decision not to let them drive away in the Cadillac was "quintessentially" reasonable. *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991). Officer Willey's decision to stay at the scene to ensure that Mendoza and his companions did not drive away in the Cadillac was also reasonable. At least one of the members of the group had already committed an offense by driving from Dallas to Brownwood without a valid license. We hold that Officer Willey's reasonable decisions did not transform the consensual encounter into a detention. Officer Willey told the group that they could not drive away from the scene in the Cadillac; he did not tell them that they could not walk away or leave the scene by other means. We conclude that a reasonable person would have felt free to walk away from the encounter. The fact that Mendoza and his companions chose to stay while they waited for their driver did not change the encounter into a detention.

13

Nor did the fact that Officer Willey asked Mendoza and his companions additional questions change the encounter to a detention. Officer Willey asked Cortez additional questions about the group's trip. He also asked her if there was anything illegal in the car. She said that she did not know and that the car belonged to Mendoza. Officer Willey then asked Mendoza whether there was anything illegal in the car. Mendoza responded that there was nothing illegal in the car. Mendoza then denied Officer Willey's request for consent to search the Cadillac. Again, Officer Willey was free to ask questions and to request consent to search during the encounter. *Bostick*, 501 U.S. at 434–35. For safety reasons, Officer Willey asked Cortez and Mendoza to wait on the sidewalk. Officer Willey did not order or direct them to wait on the sidewalk. Mendoza, Cortez, and Delarosa all sat on the sidewalk while they waited for the licensed driver to arrive. Officer Willey walked around the Cadillac and looked through its windows. Officer Willey's conduct—observing items in plain view—did not implicate the Fourth Amendment. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). Mendoza opened the trunk even though Officer Willey did not request that he open it.

Officer Willey's conduct is the most important factor to consider in the analysis of whether the consensual encounter changed to a detention. *Woodard*, 341 S.W.3d at 411. Officer Willey did nothing by means of physical force or show of authority to convey a message to Mendoza and his companions that they had to answer his questions or that they were not free to leave. Based on the totality of the circumstances, we conclude that the consensual encounter did not change to a detention. The trial court erred when it concluded that Officer Willey detained Mendoza at any point during the interaction. The canine sniff of the Cadillac in the public parking lot was not a search under the Fourth Amendment, and the officers were not required to have reasonable suspicion to justify it. *Illinois v.*

14

*Ceballes*, 543 U.S. 405, 409 (2005); *State v. Weaver*, 349 S.W.3d 521, 527–28 (Tex. Crim. App. 2011). When the drug dog alerted on the Cadillac, the officers had probable cause to search the vehicle. *Parker v. State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd). Because the officers did not find the methamphetamine as the result of an illegal detention or an illegal search, the trial court abused its discretion when it granted Mendoza's motion to suppress. The State's sole issue is sustained.

We reverse the trial court's order granting Mendoza's motion to suppress, and we remand this cause to the trial court for further proceedings consistent with this opinion.


JIM R. WRIGHT
CHIEF JUSTICE


April 17, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.