————————————

PD-0145-15

————————————

IN THE
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

————————————

NICKY CHARUNE AGNEW, Appellant

VS.

THE STATE OF TEXAS, Appellee

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

No. 12-13-00181-CR
Court of Appeals
Twelfth District of Texas

---

On Appeal from the 7th District Court of Smith County, Texas
007-1194-11

---

**ORAL ARGUMENT REQUESTED**

Carlo D'Angelo
State Bar No. 24052664
100 East Ferguson, Suite 1210
Tyler, Texas 75703
Tel. 903.595.6776
Fax 903.407.4119
carlo@dangelolegal.com
Attorney for the Appellant

## IDENTITY OF PARTIES AND COUNSEL

**Attorney for Appellant**
Appellate Counsel:
Carlo D'Angelo
100 East Ferguson, Suite 1210
Tyler, Texas 75703

**Trial Counsel:**
Michael J. Todd
700 North Pearl Street, Suite 2170
Tyler, Texas 75201

**Attorney for the State on Appeal**
Michael J. West
Assistant District Attorney, Smith County
4th Floor, Courthouse
100 North Broadway
Tyler, TX 75702

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................ii

TABLE OF CONTENTS.........................................................................iii

INDEX OF AUTHORITIES....................................................................iv

STATEMENT REGARDING ORAL ARGUMENT...........................................2

STATEMENT OF THE CASE...............................................................2-3

STATEMENT OF PROCEDURAL HISTORY..................................................3

GROUNDS FOR REVIEW.......................................................................3

ARGUMENT......................................................................................4

    **I.    The Court of Appeals erred by failing to find that the trial court committed clear error in its assessment of the prosecutor's stated justifications his race-motivated strikes in this case**……………………………………………………………4

    **II.    The court of appeals failed to apply the proper deference standard to the record facts in this case prior to denying relief as to Appellant's suppression issue**………………………6

    **III.    The Court of Appeals failed to give adequate consideration to all the factors in support of Appellant's request for an Article 38.23 instruction**……………………………………………..………10

CONCLUSION AND PRAYER ......................................................................12

CERTIFICATE OF SERVICE ......................................................................12

APPENDIX.........................................................................................14

# INDEX OF AUTHORITIES

*Agnew v. State,* Cause No. 12-13-00181-CR (Tex. App.—Tyler November 25, 2014) (not designated for publication) …………………………..…………………….3

*Agnew v. State,* Cause No. 12-13-00181-CR, 2015 WL 84726 (Tex. App.—Tyler Jan. 7 2015) (not designated for publication)……………..…………………..3

*State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) ………………….…...8

*State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) …………………8

*Chambers v. State*, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993) ………………..…..4

*Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012)……………………………11

*Hernandez v. New York*, 500 U.S. 352, 365 (1991)………………………...…….5

*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)……………….9

*Garza v. State,* 126 S.W.3d 79, 85 (Tex.Crim.App.2004) …………………..……10

*Gibson v. State,* 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) ………………..…….4

*Keeton v. State,* 749 S.W.2d 861, 868 (Tex. Crim. App. 1988)………………..…..4

*Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011) ………………...…….8

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ………………………5

## STATUTES AND CONSTITUTIONAL PROVISIONS:

Tex. Crim. P. Article 38.23(a).................................................................10

TEX. R. APP. P. 66.3(c)………………………………………………………..9

TEX. R. APP. P. 66.3(f) ...........................................................................5, 10

_____

PD-0145-15
_____

IN THE
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
_____

NICKY CHARUNE AGNEW, Appellant

VS.

THE STATE OF TEXAS, Appellee

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

No. 12-13-00181-CR
Court of Appeals
Twelfth District of Texas

On Appeal from the 7th District Court of Smith County, Texas
007-1194-11

Carlo D'Angelo
State Bar No. 24052664
100 East Ferguson, Suite 1210
Tyler, Texas 75703
Tel. 903.595.6776
Fax 903.407.4119
carlo@dangelolegal.com
Attorney for the Appellant

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW the Appellant, Nicky Charune Agnew, by and through his attorney of record, Carlo D'Angelo, and respectfully submits this Petition for Discretionary Review pursuant to Tex. R. App. P. 68.4 and would show as follows:

## **STATEMENT REQUESTING ORAL ARGUMENT**

The Court of Appeal's reasoning in this case is in direct conflict with well settled precedent in both this Court and the Supreme Court of the United States. Accordingly, this Court should grant oral argument so that counsel may more fully present its positions and answer any questions this Court may have after preliminarily reviewing this case.

## **STATEMENT OF THE CASE**

On March 22, 2011, Texas Department of Pubic Safety ("DPS") Trooper Jonathan Peters conducted a lawful stop of Appellant's vehicle on Interstate 20 in Smith County, Texas (RR 20/14). After Trooper Peters had completed Appellant's traffic citations, he called for a K-9 unit (RR 20/64). Deputy Constable Mark Waters later arrived and deployed his K-9 on Appellant's vehicle. *Id.* Constable Water's K-9 gave a passive alert to the presence of drugs in Appellant's vehicle. *Id.* Deputy Peters thereafter conducted a search of Appellant's vehicle and found a non-factory compartment in the backseat (RR 20/163). The compartment had a trunk latch which held the door in place. *Id.* Peters ultimately tripped open the latch and discovered a quantity of suspect crack cocaine. *Id.* Appellant was arrested for possession of a controlled substance and was transported to the Tyler DPS Office for booking. *Id.*

After a jury trial in the Seventh District Court of Smith County, Texas, Appellant was found guilty of the offense of possession of cocaine (greater than four grams, but less

2

than 200 grams) (RR 22/107). Appellant was thereafter sentenced to Life imprisonment in the Texas Department of Criminal Justice based in part upon his two prior felony convictions (RR 22/166).

## STATEMENT OF PROCEDURAL HISTORY

On November 25, 2014, the 12th District Court of Appeals in Tyler, Texas issued an original opinion affirming Appellant's conviction. *See Nicky Charune Agnew v. State,* Cause No. 12-13-00181-CR (Tex. App.—Tyler November 25, 2014) (not designated for publication). Appellant thereafter filed a timely motion for rehearing. On January 7, 2015, the Court of Appeals overruled Appellant's motion for rehearing, withdrew its prior opinion of November 25, 2014 and entered a new order of affirmance. *See Nicky Charune Agnew v. State,* Cause No. 12-13-00181-CR, 2015 WL 84726 (Tex. App.—Tyler Jan. 7 2015) (not designated for publication). On February 6, 2015, this Court granted Appellant's request for an extension of time in which to file a PDR. Therefore, if filed on or by March 9, 2015, this Petition will be timely.

## GROUNDS FOR REVIEW

**I. The Court of Appeals erred by failing to find that the trial court committed clear error in its assessment of the prosecutor's stated justifications his race-motivated strikes in this case.**

At trial, Appellant asked the trial court to take judicial notice that he is African American and that there were five African American individuals that were on the panel within the strike range (RR 19/152). The State exercised peremptory challenges in striking all five of those individuals. *Id.* The five African American jurors struck by the

3

State were Jurors Number 23, 24, 26, 28 and 44. *Id.* As a consequence, the remaining jury panel was completely devoid of any African American representation.

The Court of Appeals erred in holding that defendant failed to prove by a preponderance of the evidence that the reasons given by the State were a sham or a pretext for discrimination *See Keeton v. State,* 749 S.W.2d 861, 868 (Tex. Crim. App. 1988) (noting that a defendant must do more than simply disagree with the State's explanations in order to rebut the State's race neutral reasons). The Court of Appeals compounded this error by affording the trial court's finding in this respect undue deference. *See Chambers v. State,* 866 S.W.2d 9, 23 (Tex. Crim. App. 1993).

Although the trial court is typically in the best position to make a credibility determination concerning a prosecutor's stated reasons for racially motivated strikes (*Gibson v. State,* 144 S.W.3d 530, 534 (Tex. Crim. App. 2004)), the trial court in the present case should not have been afforded such sweeping deference by the Court of Appeals.

The trial court's comments at trial concerning the state of the law regarding *Batson* claims gave the Tyler Court justifiable concern and prompted it to find those comments were "troubling":

> [W]e can argue all day of whether they did it intentionally to get rid of African Americans or not. But without getting inside their heads, which the law, I don't think, lets that happen—I mean, if they've got race-neutral reasons, again, my personal opinion, that's the reason we don't see many *Batson* opinions any longer is that the problem that was there pretty much either fixed, number one, or just like all areas of the law, once it becomes under light of day, the parties figure out how to do it in a different fashion that is not really challengeable.

*See Agnew,* 2015 WL 84726 at *10

The Court of Appeals added that "under no circumstances should a trial court determine that the State's conduct in striking jurors on the basis of race is "<u>not really challengeable</u>." *See Agnew*, 2015 WL 84726 at *10 (emphasis added). The Twelfth Court nevertheless gave the trial court's assessment of the State's motivation for the racially motivated strikes undue deference by noting the trial court did ultimately elaborate on its assessment on the state of the law, stating, "But, again, I'm not saying that in this case". *Id.*

Ultimately, the Court of Appeals held that the trial court's denial of Appellant's *Batson* objection was not "clearly erroneous" because the "trial court was able to observe and hear not only what the prosecutor said, but how he said it." *Id.* The Twelfth Court should not have, however, afforded the trial court's findings such deference in light of its stated feelings with respect to the viability of a *Batson* claim. The trial court essentially stated that *Batson* objections are futile. The Twelfth Court set aside this obvious bias by the trial court and elected to afford it undue deference. *Hernandez v. New York*, 500 U.S. 352, 365 (1991). (holding "a trial judge has committed clear error when the appellate court after reviewing all of the "'evidence [would be] left with the definite and firm conviction that a mistake ha[d] been committed'") *Id.* at 369 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Accordingly, Appellant is entitled to a rehearing as to merits of this claim given the trial court's clear departure from the accepted and usual course of judicial proceedings. *See* Tex. R. App. P. 66.3(f).

**II.     The court of appeals failed to apply the proper deference standard to the record facts in this case prior to denying relief as to Appellant's suppression issue.**

Appellant filed a pretrial motion to suppress challenging the initial stop, the extended detention and the reliability of the K-9 Unit (CR 18-20). The Court of Appeals held that the trial court did not abuse its discretion by denying Appellant's motion to suppress based upon Appellant's extended detention during the traffic stop. *See Agnew*, 2015 WL 84726 at *5. In reaching this holding, the Court of Appeals concluded that the trial court failed to make explicit findings of fact in support of its ruling. *Id.* As a consequence, the Court of Appeals viewed the suppression evidence in the light most favorable to the trial court's ruling and afforded the State "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the that evidence." *Id.* at *3.

Although trial counsel failed to request the court to make findings of fact, the record demonstrates that the trial court did in fact make explicit findings on the record with respect to its denial of the motion to suppress (RR 21/135-141)

> So with those things I find that there was a valid stop, as I've already indicated. I find that the officer did have a legitimate reason to make the initial stop. And through his continued investigation, he did have reasonable suspicion to bring about the subsequent events that happened.

(RR 21/140).

The trial court made a specific finding that the trooper in this case was diligent and did not detain Appellant for an unreasonable period of time prior to the K-9 Unit's arrival.

> And it certainly appeared, when we go back and look at the timing on this particular case, that there was diligence going on. There was, I think, points in the record there was testimony it might have been 15 minutes before Officer Peters -- Trooper Peters called for the dog. But, actually, the record

6

shows it was called much earlier than 15 minutes, roughly, around the six-and-a-half to seven minute mark, according to what I was seeing on the one that, I think, is the same one the jury watched.

(RR 21/139).

According to the trial record, Trooper Peters claimed that he observed Appellant's hands shake as he handed over his insurance card (RR 20/17). Appellant informed Trooper Peters that he worked for a cleaning services, but was travelling to visit family in Kilgore, Texas where he planned to stay for two or three days (RR 20/19). Appellant had a small tote bag full of clothes in the vehicle that the Trooper surmised was an insufficient amount of clothing for a two or three day trip. *Id.* Peters believed that based upon Appellant's driving behavior, nervousness, the size of his tote bag, and his explanation as to the nature of his stay, his failure to make eye-contact with him as they spoke and his defeated posture that he was up to some criminal activity. *Id.* Trooper Peters also found it odd that Appellant, who stated he worked for a cleaning service, would be travelling during a weeknight (RR 20/19). Trooper Peters acknowledged, however, that he did not ask Appellant about his work schedule or get any specific information about his job (RR 20/36 and 233).

Trooper Peters asked if Appellant had anything illegal in the vehicle. *Id.* He claims that Appellant looked away and said no but smiled. *Id.* Peters thereafter asked for consent to search Appellant's vehicle and he claims Appellant would not give a direct answer of yes or no but instead insisted that there was no reason to search his vehicle (RR 20/22). Despite the fact that Trooper Peters had already completed warning citations for the above traffic infractions, he continued to detain Appellant until a K-9 unit could arrive. *Id.*

7

After a lengthy detention, Deputy Constable Mark Waters and his K-9 Cros arrived to the scene (RR 20/64). Deputy Waters deployed his K-9 and conducted a free air search around the outside of Appellant's vehicle. *Id.* Waters claims that Cros alerted to the presence of drugs on the passenger side of Appellant's vehicle. *Id.*

On appeal, the Twelfth Court incorrectly concluded that the trial court failed to make specific record findings in this case. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (noting that a trial court's findings of fact and conclusions of law are sufficient if they are "recorded in some way, whether written out and filed by the trial court, or stated on the record at the hearing").

The Court of Appeals based it's flawed finding upon *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011) (finding that when the trial court does not make express findings of fact, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and should assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record). The Court of Appeals reliance upon *Lujan* is misplaced, however, because in the present case the trial court did in fact articulate specific findings.

The Tyler court further compounded this error by reasoning that where the trial court makes **"implicit"** findings, the State is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *See Agnew*, 2015 WL 84726 at \*3 (emphasis added). The Twelfth Court's reliance upon *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) in reaching this conclusion is therefore also misplaced. This Court in *Castleberry* held that:

> When the trial judge makes **explicit findings** of fact, we afford those findings almost total deference as long as the record supports them, regardless of whether the motion to suppress was granted or denied. Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.

*Id.* at 465 (emphasis added).

As a consequence, the Court of Appeal erred in assigning the State such a high standard of deference when it evaluated the facts in the record that supported the trial court's ruling. Because the trial court made explicit findings of fact in this case, the Court of Appeal should have conducted a *de novo* review of the facts in support of the court's ruling that the detention in this case was reasonable. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (noting that the question of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is subject to *de novo* review because that is an issue of law-the application of legal principles to a specific set of facts).

As a consequence, the Court of Appeal's reasoning in this case is in direct conflict with both this Court and the Supreme Court of the United States and necessitates further review under this Petition. *See* Tex. R. App. P. 66.3(c).

The Court of Appeal wrongly concluded that the trial court made no explicit findings of fact in this case and therefore took it upon itself to imply the necessary findings in support of the trial court's ruling. By doing so, the Tyler Court of Appeals failed to consider whether the evidence in this case, when viewed in the light most favorable to the trial court's ruling, supported those implied findings of fact. The Tyler Court's holding so

9

far departs from the accepted and usual course of judicial proceedings that this Court should exercise its power of supervision in this case. Tex. R. App. P. 66.3(f).

## III. The Court of Appeals failed to give adequate consideration to all the factors in support of Appellant's request for an Article 38.23 instruction.

The Court of Appeals held that the trial court did not err in refusing to provide an Article 38.23 jury instruction. *See Agnew*, 2015 WL 84726 at \*6. In reaching its holding, the Court of Appeals failed to fully consider the factual issues articulated in Appellant's brief (Appellant's Brief at 3, 5-20 and 42). *See Garza v. State,* 126 S.W.3d 79, 85 (Tex.Crim.App.2004) (A jury instruction under article 38.23 is required only when there is a factual dispute concerning the legality of the seizure of evidence).

The Court of Appeals states in its opinion that Appellant failed to "specifically delineate the issues of fact that the jury should have decided." *Id.* The Twelfth Court concluded that the only fact-issue raised by Appellant concerned whether he appeared nervous after he was detained. *Id.* In reaching this conclusion, the Court failed to consider a number of additional fact-claims raised in Appellant's brief that the jury should have decided and that justified the granting of an Article 38.23 instruction. Specifically, Appellant articulated the following facts that touched upon the impropriety of the seizure in this case.

> In the present case, the evidence heard by the jury raised an issue of fact that Appellant affirmatively contested. Specifically, Appellant contested the four factors alleged by Trooper Peters in support of the continued detention in this case; 1) driving behavior; 2) his nervousness; 3) his insufficient clothing for a 2 to 3-night trip; and 4) his mid-week trip for a cleaning job (RR 20/229). There is no doubt that these contested factual issues were material to the lawfulness of the prolonged detention in this case.

Appellant's Brief at 42.

10

Appellant also provided the Tyler Court with a detailed dissection of these four factors both in the Statement of Facts and in his first issue concerning the denial of the motion to suppress. *Id.* at 3 and 5 – 20. Appellant thereafter restated these fact-issues in support of the 38.23 jury instruction claim.

> Trooper Peters agreed with Appellant on cross examination that, prior to the continued detention, he was not aware of Appellant's insufficient clothing for a 2 to 3-night trip (RR 20/246) or his mid-week trip for a cleaning job (RR 20/233).

Appellant's Brief at 42.

Rather than addressing these factors, the Court of Appeals focused exclusively upon the issue of nervousness reasoning that this was the only disputed fact alleged. *See Agnew*, 2015 WL 84726 at 6\* ("His shaking hands were not the only evidence of his nervousness and therefore, no fact issue was present for the jury to decide"). The Twelfth Court went on to list the other instances of nervousness that justified the prolong detention including Appellant's lack of eye contact, his clenched fist, his defeated posture and his nervous smile. *Id.* But the Court failed to address any of the non-nervousness factors that Appellant took issue with and that the jury should have considered under an Article 38.23 instruction.

The Tyler court focused strictly on Appellant's nervousness and thereby failed to consider any of the other disputed facts raised by Appellant. *See Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012) (holding that although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention following a traffic stop, it can do so in combination with other factors).

11

These other disputed facts were equally material to Appellant's claim that the evidence seized in this case was inadmissible. Accordingly, Appellant is entitled to consideration of discretionary review of this claim. *See* Tex. R. App. P. 66.3(f) (noting that a PDR should be granted when a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision).

## CONCLUSION AND PRAYER

Wherefore, premises considered, Appellant respectfully prays that the Court grant this Petition for Discretionary Review, that the case be set for submission in the Court, and, after submission, that the Court reverse the judgment of the appellate court and remand for further proceedings.

Respectfully submitted,

/s/ Carlo D'Angelo
Carlo D'Angelo
State Bar No. 24052664
100 East Ferguson, Suite 1210
Tyler, Texas 75703
Tel. 903.595.6776
Fax 903.407.4119
carlo@dangelolegal.com
Attorney for the Appellant

CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Petition for Discretionary Review was delivered to the following parties on 9 March 2015:

12

Michael West
Assistant District Attorney
Smith County District Attorney
100 N. Broadway Avenue, 4th Floor
Tyler, Texas 75702
mwest@smith-county.com

State Prosecuting Attorney
P.O. Box 13046
Austin, TX 78711

        /s/ Carlo D'Angelo
        Carlo D'Angelo

## APPENDIX

*Agnew v. State,* Cause No. 12-13-00181-CR, 2015 WL 84726 (Tex. App.—Tyler Jan. 7 2015) (not designated for publication)

# NO. 12-13-00181-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NICKY CHARUNE AGNEW,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION ON REHEARING*

Nicky Charune Agnew filed a motion for rehearing, which is overruled. We withdraw our opinion dated November 25, 2014, and substitute the following opinion in its place.

Nicky Charune Agnew appeals his conviction for possession of between four and two hundred grams of cocaine, for which he was sentenced to imprisonment for life. Appellant raises six issues on appeal. We affirm.

## BACKGROUND

Appellant was driving his vehicle in the left lane of eastbound Interstate 20 in Smith County, Texas. Texas Department of Public Safety Trooper Jonathan Peters was traveling in the same lane behind Appellant. Peters flashed his patrol vehicle's high beam headlights at Appellant to signal to him to move his vehicle out of the left lane to allow Peters to pass, but Appellant failed to oblige. Instead, Appellant slowed down. Peters initiated a traffic stop based on Appellant's driving in the left lane when not passing another vehicle.

When Peters engaged his patrol vehicle's light bar to indicate to Appellant that he needed to pull over, Appellant initially allowed his vehicle to drift farther to the left toward the median. But Appellant eventually pulled over to the right side of the interstate. As Appellant slowed his vehicle, Peters noticed that one of Appellant's brake lights was inoperable.

Peters made contact with Appellant. He obtained Appellant's driver's license and proof of insurance and instructed Appellant to exit the vehicle. Peters noticed that Appellant had a small bag in his back seat that appeared to contain only two or three items of clothing. Peters further observed that Appellant was acting nervously. Peters told Appellant that he was giving him a warning citation, but took note that Appellant's nervous behavior persisted.

Peters asked Appellant if he had a job, and Appellant answered that he worked for a commercial cleaning company. Peters also asked Appellant about the purpose of his trip, and Appellant answered that he was traveling to visit family in Kilgore, Texas, for two to three days. Peters doubted the veracity of Appellant's stated purpose of his trip for two reasons. First, Peters stopped Appellant during the work week, and Peters believed that a janitor working for a commercial cleaning company would be working on weeknights and could not miss that many days of work. Second, the clothing Peters observed in the back seat of Appellant's vehicle appeared to him to be insufficient for a two or three day trip.

Peters determined that Appellant had no outstanding warrants and completed the warning citation for Appellant. But Peters suspected nonetheless that Appellant was committing a crime. Peters asked Appellant if there was anything illegal in his vehicle. Appellant answered, "No," but looked away and smiled as he answered. Peters requested permission to search Appellant's vehicle. Appellant initially avoided directly answering Peters's request, but ultimately declined to give his consent to the search. In response, Peters requested that a K-9 Unit come to the scene.

Deputy Mark Waters of the Smith County Precinct 5 constable's office and his trained drug dog, Cros, arrived at the scene several minutes later. According to Waters, Cros gave a positive alert that drugs were in Appellant's vehicle. As a result of Cros's positive alert, Peters and other officers then on the scene began their search. During their search, the officers found a nonfactory compartment in Appellant's vehicle, which contained a sizeable quantity of crack cocaine. Appellant was placed under arrest.

Appellant was charged by indictment with possession of between four and two hundred grams of cocaine and pleaded "not guilty." The indictment further alleged that Appellant had been convicted of two prior felonies. Appellant filed a motion to suppress, which the trial court denied.

The matter proceeded to a jury trial. Ultimately, the jury found Appellant "guilty" as charged. Following a trial on punishment, the jury found the enhancement allegations to be "true" and assessed Appellant's punishment at imprisonment for life. The trial court sentenced Appellant accordingly, and this appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress because Peters unlawfully extended the traffic stop. In his second issue, Appellant contends that the trial court erred in denying his motion to suppress based upon the unreliability of the K-9 Unit.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record

and was correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

**Governing Law**

A routine traffic stop closely resembles an investigative detention. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.–Texarkana 1999, pet. ref'd); *see also United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio* to determine (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *See Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242–43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id*. at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). An officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This is an objective standard. *Id*. Thus, when an officer has a reasonable basis for suspecting that a person has committed an offense, the officer may legally initiate an investigative stop. *See Powell*, 5 S.W.3d at 376 (citing *Drago v. State*, 553 S.W.2d 375, 377–78 (Tex. Crim. App. 1977)).

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id*. at 64–65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685–86, 105 S. Ct. 1568, 1569, 84 L. Ed. 2d 605 (1985)). With regard to a traffic stop, an officer can conduct a

4

license and warrants check. *Id*. at 63. An officer also may ask the driver to exit the vehicle. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003, pet. ref'd).

An investigative stop that continues longer than necessary to complete the purpose of the stop is permitted if additional facts provide a reasonable suspicion of another crime or possible crime. *Green v. State*, 256 S.W.3d 456, 462 (Tex. App.–Waco 2008, no pet.). If a valid traffic stop evolves into an investigative detention for a drug related offense so that a canine sniff can take place, reasonable suspicion is necessary to prolong the detention. *Id*. We examine the totality of the circumstances to determine the reasonableness of a temporary detention. *Curtis v. State*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007).

While reasonable suspicion allows an officer to temporarily detain someone, the officer must act to confirm or dispel his suspicions quickly. *See Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). One reasonable method of confirming or dispelling reasonable suspicion is to have a trained K-9 unit perform an "open air" search of the vehicle. *Id*. If the drug dog alerts, the presence of drugs is confirmed, and the officer may conduct a warrantless search. *See id*. at 603–04. If the drug dog does not alert, generally, the temporary detention ceases. *Id*. at 604.

We look at the totality of the circumstances to determine whether a K-9 unit is reliable. *Florida v. Harris*, 133 S. Ct. 1050, 1055, 185 L. Ed. 2d 61 (2013). A K-9 unit's satisfactory performance in a narcotics certification or training program can provide sufficient reason to trust the alert. *Id*., 133 S. Ct. at 1057. If a bona fide organization has certified a K-9 unit after testing, we can presume, subject to any conflicting evidence offered, that the drug dog's alert provides probable cause to search. *Id*. But the defendant must have the opportunity to challenge the K-9 unit's reliability, whether by cross examination of the state's witnesses or introducing evidence from his fact or expert witnesses. *Id*.

## Application

In his pretrial motion to suppress, Appellant challenged the initial stop, the extended detention, and the reliability of the K-9 Unit. Later, Appellant abandoned his challenge to the validity of the initial traffic stop. We address Appellant's two remaining bases for his motion to suppress.

*Extended Detention During Traffic Stop*

Appellant first argues that the stop was unnecessarily lengthened to allow time for the K-9 Unit to arrive at the scene. Peters admitted that when he exited his vehicle the second time, he should have had Appellant's warning citation in his hand. Yet the K-9 Unit did not arrive for several more minutes. Thus, to continue Appellant's detention, Peters needed reasonable suspicion of another crime or possible crime. *See* **Green**, 256 S.W.3d at 462. The State contends that Peters developed reasonable suspicion based on several observations he made during the course of his encounter with Appellant.

First, Peters stated that Appellant drove in an unusual manner. Appellant ignored Peters's flashing his patrol car's high beam headlights and, instead, remained in the left lane. When Peters initiated the traffic stop, Appellant initially moved his vehicle toward the median rather than toward the outside shoulder. Then, Appellant slowed his vehicle substantially to the point that Peters was compelled to maneuver his vehicle into the middle of the two lanes of eastbound traffic to lessen the likelihood of Appellant's causing an accident.

Second, Appellant behaved nervously. As Appellant handed Peters his proof of insurance, Peters noticed Appellant's hands were shaking. Peters admitted that Appellant's shaking hands could not be seen in the video of the traffic stop. But he explained that the distance between Appellant and the camera and the quality of the video recording made Appellant's trembling hands indiscernible. Peters further testified that Appellant did not make direct eye contact with him and had his right hand clenched in a fist. As the encounter continued, Appellant slumped in a somewhat defeated posture. Moreover, when Peters asked Appellant if he had anything illegal in the vehicle, Appellant answered, "No." But Peters noticed that Appellant smiled nervously as he answered. Peters testified that Appellant's level of nervousness was abnormal, especially after Peters told him he was receiving a warning citation rather than a ticket.

Third, Peters did not believe Appellant's stated purpose of his trip. Peters stopped Appellant during the work week and doubted that a janitor working for a commercial cleaning company who would be required to work on weeknights could be absent for two to three

consecutive nights. Further, Peters observed a bag with only two or three items of clothing in it, which Peters believed was insufficient for a two or three day trip.[1]

Finally, Peters stated that this portion of Interstate 20 is an often-used drug corridor. Thus, according to Peters, the totality of the circumstances gave him a high level of suspicion that Appellant was transporting drugs.

Based on our review of the record, we conclude that the evidence supports the trial court's finding that Peters developed reasonable suspicion during his investigation of Appellant's traffic violation to suspect that Appellant committed other crimes. Considering these facts, the trial court reasonably could have determined that Peters "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain [Appellant]." *Kothe*, 152 S.W.3d at 64–65. Moreover, the trial court reasonably could have determined that Peters developed reasonable suspicion during his initial investigation to justify a prolonged detention for a canine sniff. *See Green*, 256 S.W.3d at 462. Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress based upon Appellant's extended detention during the traffic stop. Appellant's first issue is overruled.

*Reliability of K-9 Unit*

We next consider Appellant's contention that the K-9 Unit was unreliable. Waters testified that he was first certified as a K-9 handler in 2006 and that he and Cros completed their certification training in 2008. Waters further testified that before the events in question, he and Cros had been recertified four times by USK9 Unlimited (USK9) and once by National Narcotic Detector Dog Association (NNDDA). Waters stated that he and Cros also participated in numerous training sessions provided by local law enforcement agencies and had applied their acquired skills in several on-the-job situations.

Waters admitted that his and Cros's results were not perfect; there were several occasions where Cros alerted, but drugs were not found in a vehicle. However, Waters defended these unsubstantiated alerts on the basis that Cros had been trained to detect the odor of drugs, which can persist even after drugs have been removed from an area. Thus, the evidence demonstrated that it was impossible to determine Cros's percentage of proficiency in his on-the-job vehicle

---

[1] Appellant correctly asserts that Peters did not ask him to elaborate about his work schedule or the details of his trip.

7

searches. Waters stated that he believed Cros was proficient and accurate based on Cros's performance in on-the-job searches and in training. Waters also stated that Cros was extremely reliable and accurate.

Waters testified specifically concerning his and Cros's involvement in the search of Appellant's vehicle. Waters stated that he allowed Cros time to acclimate to the surroundings. Waters further stated that he had Cros run a sweep of the vehicle, and Cros showed a "justified noticeable difference" at the passenger side door seam area of the vehicle. Waters testified that Cros exhibited a "final response" by scratching at that portion of the vehicle. Waters further testified that he did not provide Cros any cues; he did not tap on any portion of the vehicle and did not provide Cros any indication that drugs were in the vehicle.

Based on our review of the record, we conclude that the evidence supports the trial court's findings that Waters and Cros were properly trained and certified and that Cros's alert provided probable cause to search Appellant's vehicle. *See Harris*, 133 S. Ct. at 1057; *Matthews*, 431 S.W.3d at 603–04. Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion in denying Appellant's motion to suppress based upon the lack of reliability of the K-9 Unit. Appellant's second issue is overruled.

<u>**JURY INSTRUCTION**</u>

In his third issue, Appellant contends that the trial court erred in denying Appellant's request for a jury instruction under Texas Code of Criminal Procedure, Article 38.23(a).

**Applicable Law**

Under Article 38.23, evidence obtained in violation of the Constitution or laws of the United States or those of Texas may not be admitted in a criminal case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). If a fact issue is raised about whether evidence was improperly obtained in this manner, the jury shall be instructed to disregard evidence that it finds was obtained in violation of the United States or Texas Constitution or laws. *See id*.

A defendant's right to the submission of an Article 38.23 jury instruction is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007) (citing *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000)). To be entitled to an Article 38.23 jury instruction, the defendant must establish that (1) the evidence heard by

the jury raises an issue of fact, (2) the evidence on that fact is affirmatively contested, and (3) the contested factual issue is material to the lawfulness of the challenged conduct. ***Hamal v. State***, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone as a question of law. ***Madden***, 242 S.W.3d at 510.

**Application**

In his brief, Appellant does not specifically delineate the issues of fact that the jury should have decided. Rather, Appellant claims that he raised a fact issue as to whether he was nervous after Peters stopped him because the video recording does not show that Appellant's hands were shaking when he gave Peters his proof of insurance.

As we stated previously, Peters testified that he saw Appellant's hands visibly shaking when Appellant gave Peters his proof of insurance. But the video recording of the stop was not clear. We have reviewed the video recording and have observed that there may be some slight shaking of Appellant's hands or minimal exhibition of other nervous behavior by Appellant when he is walking toward Peters. Peters conceded this point at trial, but he attributed the fact that the video did not confirm his testimony to the distance of the camera from Appellant and the poor quality of the video recording.

If we assume that the evidence creates a fact issue as to whether Appellant acted nervously because his hands were shaking when he gave Peters his proof of insurance, an Article 38.23 jury instruction is still not required because that contested factual issue is not material to the lawfulness of the challenged conduct. *See **Hamal***, 390 S.W.3d at 306. Peters stated that Appellant exhibited other nervous behavior. The record reflects that Appellant was not making direct eye contact with Peters and had his right hand clenched in a fist. Further, as the encounter persisted, Appellant slumped slightly in a somewhat defeated posture. Moreover, when Peters asked Appellant if he had anything illegal in the vehicle, Appellant answered, "No," but smiled nervously as he answered. Peters's observation of these exhibitions of nervous behavior by Appellant were not placed in issue by the video recording.

Peters claimed that Appellant's level of nervousness was abnormal, especially after he was told that he was receiving a warning citation rather than a ticket. And Appellant failed to demonstrate that testimony concerning his shaking hands was material to the lawfulness of his continued detention. His shaking hands were not the only evidence of his nervousness and,

9

therefore, no fact issue was present for the jury to decide. Thus, the trial court did not err in refusing to provide an Article 38.23 jury instruction. Appellant's third issue is overruled.

EXCLUSION OF EXPERT WITNESS

In his fourth issue, Appellant complains that the trial court erroneously excluded his expert witness, Lawrence Meyers.

## Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *See Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). The trial court's ruling will be upheld if it is within the zone of reasonable disagreement. *Id*.

A witness may offer an opinion if he possesses specialized knowledge, skill, experience, training, or education related to a fact in issue. TEX. R. EVID. 702. But the trial court serves as the gatekeeper to determine whether the proffered scientific evidence is sufficiently reliable and relevant. *Sexton*, 93 S.W.3d at 99. For scientific evidence to be reliable, the proponent must show that the underlying scientific theory is valid, the technique applying the theory is valid, and the technique was properly applied on the occasion in question. *Id*. at 100. For an expert's testimony to be relevant, the testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996); *see also* TEX. R. EVID. 702. Expert testimony that does not relate to a fact in issue is not helpful. *Jordan*, 928 S.W.2d at 555.

## Application

At a pretrial hearing, Appellant represented to the trial court that he would not have an expert witness. However, Appellant changed his strategy and disclosed Meyers as an expert on K-9 units. Before trial, the State filed a motion to exclude Meyers's testimony.

Appellant represented to the trial court that Meyers was prepared to testify that the K-9 Unit was not properly trained. However, at the hearing on the State's motion to exclude Meyers's testimony, Meyers stated that he could not give an opinion regarding the initial training of the K-9 Unit. Instead, he said that his major concern was whether Cros was being cued frequently by Waters. But Meyers declined to testify that Cros was being cued frequently by Waters because in his opinion, the K-9 Unit had not been properly tested for cuing. Meyers clarified his testimony—he was not asserting that Waters was intentionally cuing Cros, but

10

believed that unintentional cuing could be occurring. He further clarified his position, stating that he was not offering an opinion that any unintentional cuing occurred in Cros's search of Appellant's vehicle. When asked if he was going to have an opinion concerning whether Cros was unintentionally cued or Waters acted inappropriately, he stated that he was not.

Meyers also believed that Cros should have received more training and testing with odors that are close to the same odor as the illegal narcotics Cros was trained to detect. Specifically, Meyers opined that Cros may have mistaken an innocent odor for that of a controlled substance. Once again, however, Meyers clarified his position, stating that he was not offering an opinion that Cros detected an innocent odor in his search of Appellant's vehicle. When asked if he had an opinion regarding whether Cros detected an innocent odor in this case, Meyers stated that he did not.

After considering Meyers's testimony outside the presence of the jury, the trial court determined that Meyers should be excluded as an expert witness. The court explained that while Meyers had some general opinions regarding K-9 units and their training, he had no specific opinions pertaining to Cros's and Waters's search in this case.

We agree with the trial court that Meyers lacked specific opinions concerning Cros's and Waters's search conducted in this case, which rendered his opinions unhelpful to the jury. *See Jordan*, 928 S.W.2d at 555. Therefore, we hold that the trial court properly fulfilled its role as gatekeeper, and did not abuse its discretion. Appellant's fourth issue is overruled.

## *BATSON* MOTION

In his fifth issue, Appellant contends that the trial court erred in denying his **Batson** motion.[2] Specifically, Appellant alleges that the State engaged in purposeful discrimination when it used its peremptory challenges to excuse all five African American individuals who could have served on the jury.

### Standard of Review and Applicable Law

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a party from challenging potential jurors on the basis of their race. U.S. CONST. amend. XIV; **Batson**, 476 U.S. at 89, 106 S. Ct. at 1719. A trial court follows a three step process to evaluate a claim that a litigant has made a peremptory strike based on race.

---

[2] *See **Batson v. Kentucky***, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986).

*Snyder v. Louisiana*, 552 U.S. 472, 476, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008). First, a defendant must make a prima facie showing that the state has used a peremptory challenge to remove a potential juror on account of race. *Id*.; *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995). A defendant may establish a prima facie case solely on evidence concerning the state's exercise of peremptory challenges at trial. *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723. He also must show that these facts and any other relevant circumstances raise an inference that the state has excluded potential jurors from the petit jury based on race. *See id*.

Once the defendant has made this prima facie showing, the burden shifts to the state to come forward with a race neutral explanation for challenging the jurors. *Snyder*, 552 U.S. at 476–77, 128 S. Ct. at 1207; *Batson*, 476 U.S. at 97–98, 106 S. Ct. at 1723–24. If the state offers race neutral reasons for the strikes, the burden shifts back to the defendant to show that the state's race neutral explanations for the strikes are contrived or a pretext to conceal a racially discriminatory intent. *See Shuffield v. State*, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006); *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). The credibility of a prosecutor who offers race neutral explanations for disparate striking of jurors can be measured by (1) the prosecutor's demeanor, (2) how reasonable or how improbable the explanations are, and (3) whether the proffered rationale has some basis in accepted trial strategy. *See Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003). But those factors are not exclusive, and we examine all relevant factors when evaluating the prosecutor's explanations for strikes that are alleged to be pretextual. *See Miller-El v. Dretke*, 545 U.S. 231, 253, 125 S. Ct. 2317, 2332, 162 L. Ed. 2d 196 (2005) (examining actual strikes, use of jury shuffle, disparity in questioning, and history of excluding racial minorities from juries).

We will disturb a trial court's ruling on a *Batson* motion only if it is "clearly erroneous." *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207; *Guzman v. State*, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002). Generally, a fact finder's decision is clearly erroneous when it leaves an appellate court with a "definite and firm conviction that a mistake has been committed." *Guzman*, 85 S.W.3d at 254. We review the evidence in the light most favorable to the trial court's ruling and afford great deference to that ruling. *Jasper*, 61 S.W.3d at 422. Furthermore, a claim that the proffered race neutral reasons for strikes are pretextual presents a question of fact, and the trial court is in the best position to evaluate such claims. *See Watkins v. State*, 245 S.W.3d 444, 447

(Tex. Crim. App. 2008); *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). The ultimate plausibility of a race neutral explanation is to be considered in the context of whether the defendant has satisfied his burden to show that the strike was the product of the prosecutor's purposeful discrimination. *Watkins*, 245 S.W.3d at 447.

<u>Application</u>

The members of the jury pool who ultimately served on the jury were Jurors 5, 13, 14, 19, 20, 22, 25, 40, 43, 49, 52, and 53. None of the jurors who served were African American. African Americans in the strike range were Jurors 23, 24, 26, 28, and 44. The State used its peremptory strikes on all five of these jurors, as well as using peremptory strikes on Jurors 8, 27, 35, 37, and 41.

Appellant raised a *Batson* challenge to the State's peremptory strikes. Appellant noted that there were five African American individuals within the strike range, and the State used peremptory strikes on every one of these individuals. The trial court correctly found that Appellant carried his initial burden, thus requiring the State to provide a race neutral basis for the strikes. *See Batson*, 476 U.S. at 96, 106 S. Ct. at 1723.

The State responded that it used a peremptory strike on Juror 23 because she believed in the legalization of marijuana and had only a high school education. The State further responded that its decision to strike Juror 35, a white male, was similarly motivated.

The State also claimed that it used a peremptory strike on Juror 24 because he believed in rehabilitation rather than punishment as the basis for sentencing and had been employed for only one year. The State further claimed that its decision to strike Juror 37, a white female, was based on the same rationale.

The State next asserted that it used a peremptory strike on Juror 26 because she was separated from her husband. The State further asserted that its decision to strike Juror 41, a white female, was based on the same reasoning.

Moreover, the State claimed that it used a peremptory strike on Juror 28 because she believed in rehabilitation rather than punishment as the basis for sentencing and had not completely filled out her juror questionnaire card.

Finally, the State contended that its decision to use a peremptory strike on Juror 44 was based on the fact that he believed in rehabilitation rather than punishment as the basis for sentencing and he worked at Delek Refinery. The prosecutor claimed that in his eight years as a

prosecutor, he determined that individuals from Delek Refinery were more pro-defense and anti-State. It was further revealed that Juror 44 also believed in the legalization of marijuana.

Appellant responded that Juror 13, a white male, also believed in the legalization of marijuana, but was not struck from the jury. Appellant asserted further that Jurors 14 and 22 had not received any degrees more advanced than a high school diploma. Moreover, Appellant claimed that Jurors 19, 43, and 52 believed that rehabilitation rather than punishment should be the main consideration underlying sentencing. Appellant further claimed that Jurors 20 and 25, both white males, did not completely fill out their juror questionnaires.[3] The State did not use a peremptory strike on any of these jurors.

The State replied that each of these jurors had some attribute other than race that distinguished each of them from those jurors who were struck. The State contended that Juror 13 had a postgraduate degree, Jurors 14 and 22 did not believe in the legalization of marijuana, and Jurors 20 and 25 believed that punishment should be the focus of sentencing. Finally, the State asserted that although Jurors 19, 43, and 52 believed in rehabilitation, none of them were newly employed, each completely filled out his juror questionnaire, and none worked for Delek Refinery.

Appellant did not cross examine the prosecutor. Thus, we are left with a very limited record from which to evaluate whether the prosecutor's reasons were pretextual. But based on the record before us, we conclude that some of the prosecutor's reasons for striking these jurors at least raise the possibility of pretext. For instance, if the prosecutor was, in fact, concerned about prospective jurors who have worked at Delek Refinery, it would be reasonable to ask if any of them had worked there previously since several of the potential jurors indicated on their jury questionnaire that they were retired or unemployed. But the prosecutor never asked any of the jurors if he or she had any connection with Delek Refinery and, ultimately, one retired person was selected for the jury.[4]

We also note that the following statement made by the trial court is troubling:

---

[3] Each of the three jurors who failed to complete the questionnaire left one question blank. Juror 20 did not put his age on the questionnaire, Juror 25 did not put his work telephone number on the questionnaire, and Juror 28 did not put the range of ages for her five stepchildren on the questionnaire.

[4] We note that the prosecutor's aversion to jurors who are or were employees of Delek Refinery is a curious one. The record is silent concerning how long he has imposed the rule that he uses peremptory strikes against any Delek Refinery employees, and the prosecutor did not volunteer this information to the trial court. Appellant did not inquire about this information during the hearing on his *Batson* motion.

14

[W]e can argue all day of whether they did it intentionally to get rid of African Americans or not. But without getting inside their heads, which the law, I don't think, lets that happen – I mean, if they've got race-neutral reasons, again, my personal opinion, that's the reason we don't see many **Batson** opinions any longer is that the problem that was there pretty much either fixed, number one, or just like all areas of the law, once it becomes under light of day, the parties figure out how to do it in a different fashion that is not really challengeable.

We stress that the trial court certainly has the duty to determine whether the State's proffered reasons are its true motivations or a subterfuge. And under no circumstances should a trial court determine that the State's conduct in striking jurors on the basis of race is "not really challengeable."

Nonetheless, we note that the trial court elaborated on its assessment on the state of the law, stating, "But, again, I'm not saying that in this case." The State persisted, however, and repeated this incorrect standard, asserting, "I believe the [trial court is] correct in saying as long as we articulate race neutral reasons, that's sufficient. Whether other individuals did or did not have the same criteria that were not minorities and they made the jury or not, I don't believe that's an issue for **Batson**." In response, Appellant's counsel sought to emphasize the correct standard, stating that "[t]rial judges are not without ability to detect pretext." Ultimately, the trial court found that it did not "have any evidence that would suggest that [race] was the sole reason that the State struck those individuals" and denied Appellant's **Batson** challenge.

The prosecutor's race neutral explanations may be reasonable, and we are mindful that the trial court was able to observe and hear not only what the prosecutor said, but how he said it. *See* **Watkins**, 245 S.W.3d at 447. Based on the record at hand, we conclude that the trial court reasonably could have determined that the prosecutor's race neutral explanations were true after it measured the prosecutor's demeanor and the reasonableness or improbability of the explanations he gave, and after considering whether those explanations have some basis in accepted trial strategy. *See* **Cockrell**, 537 U.S. at 339, 123 S. Ct. at 1040. Therefore, we hold that the trial court's denial of Appellant's **Batson** motion was not "clearly erroneous." Appellant's fifth issue is overruled.

In his sixth issue, Appellant contends that the trial court erred by denying his motion for mistrial. Appellant's motion was based on an improper comment by the prosecutor during his closing argument.

**Standard of Review and Applicable Law**

We review the denial of a motion for mistrial under the abuse of discretion standard. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Furthermore, mistrial is appropriate only for "highly prejudicial and incurable errors." *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). A trial court grants a mistrial "to end trial proceedings when faced with error so prejudicial that 'expenditure of further time and expense would be wasteful and futile.'" *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)).

**Application**

Appellant failed to return to the courtroom after a recess in the trial. In response, the trial court provided the following instruction to the jury:

> The whereabouts of [Appellant] are unknown to us, at this time, to either the parties or the Court. Our statutes in Texas provide that if [Appellant voluntarily] absents himself after pleading to the indictment in the trial, that the trial may proceed to its conclusion. So I'm directing that the case proceed in the absence of [Appellant]. Now, I'm instructing you, as well, not to draw any conclusion, either for or against [Appellant] because he is absent; because we do not know, at present, why he's not here.

The State chose not to abide by the trial court's instruction, however, and instead asked the jury to draw a conclusion against Appellant based on his absence as follows:

> Neither can [Appellant's counsel] get up about reasonable suspicion and probable cause because it's not in here. Already been dealt with by the judge. So let's talk about intentionally or knowingly because that's what we're left with. And maybe it's because it's not in the charge that we're short one.

Appellant's counsel objected. The trial court had counsel for the State and Appellant approach the bench. The trial court then warned the State, "I don't want to hear another comment in the

16

State's argument about [Appellant's] not being here. I've just instructed the jury for [his] not being here. If you do it again, I'm going to declare a mistrial." Appellant then moved for a mistrial, and the trial court denied Appellant's motion. The State continued its argument. The State did not again make reference to Appellant's absence.

Based on our review of the record, we conclude that the State's error was not so prejudicial that continuation of the trial was wasteful and futile. *See Simpson*, 119 S.W.3d at 272. The trial court had previously instructed the jury to not draw a conclusion against Appellant based on his absence. When the State sought to have the jury do otherwise, Appellant objected. However, Appellant did not ask for the trial court to iterate its instruction to the jury. We presume that the jury abided by the trial court's instruction and did not draw a conclusion against Appellant based on his absence. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Therefore, we hold that the trial court did not err in denying Appellant's motion for mistrial. Appellant's sixth issue is overruled.

### DISPOSITION

Having overruled Appellant's six issues, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered January 7, 2015.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

Print this page

# Case # PD-0145-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 03/09/2015 04:04:43 PM |
| Case Number | PD-0145-15 |
| Case Description | |
| Lower Court Number | |
| Assigned to Judge | |
| Attorney | CARLO D'ANGELO |
| Firm Name | Law |
| Filed By | Jackie Groves |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | File&ServeXpress - TexFile (8014) |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 7282304 |
| Order # | 004426535-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | ;D'Angelo, Carlo PC 02-7003304 |
| Comments | carlo@dangelolegal.com |
| Courtesy Copies | carlo@dangelolegal.com, mwest@smith-county.com |
| Status | Rejected |

**Fees**

Court Fee                                            $0.00

Service Fee                                          $0.00

**Rejection Information**

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 03/10/2015 10:17:25 AM | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain the identity of Judge, Parties and Counsel in compliance with [Rule 68.4(a)]; it is missing the identity of the trial court judge. You have ten days to tender a corrected petition for discretionary review. |

**Documents**

| *Lead Document* | Petition for Discretionary Review AGNEW.pdf | [Original] |
|---|---|---|

**eService Details**

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Ada Mike West mwest@smith-county.com | | EServe | Sent | Yes | 03/09/2015 04:08:59 PM |